324-0319-WC Card Dynamix, Appellant by Kenneth Smith v. Illinois Workers' Compensation Comm'n et al., Marcella Thorne-Appley by Kurt Neumann Mr. Smith, you may proceed. Good morning and thank you, Justices. Good morning, Mr. Neumann. Thank you for this opportunity, Justices, to briefly just go over some points that have been already briefed. We are asking the Court to find that the initial decision by the Illinois Workers' Compensation Commission as of issued in 22 was not against the manifest weight of the evidence in arguing that the first premise is that the respondents did have a right to a Section 12 examination. We do note that this is a post-arbitration Section 12 examination. When looking at prior cases like King, I think those cases support that there is a right to a post-arbitration Section 12 examination. More specifically, I think the petitioner has always stated that there was no right to such examination because they would like this Court to limit how compensation is viewed in Section 12. The compensation does not and is not limited to just TTD benefits or PERM total benefits. Compensation also applies to medical treatment. In Illinois, probably about 50% of Section 12 examinations concern some sort of medical treatment. There is no case law in Illinois that says, one, that Section 12 examinations are only allowed in cases involving temporary total disability or partial disability or even total permanency. I think that was indicated by the Workers' Compensation Commission in its initial decision that they read compensation to mean medical treatment also. There is no case law to say otherwise. I bring up that point because I'm not sure the judge that dismissed the case, if he was trying to ascertain or allege that he stated that the commission misapplied Section 12. From that one statement, I'm not sure if he was trying to say that there was no right to a Section 12 examination at that point in time. Is it possible to award penalties on unpaid medical expenses? Yes, Your Honor, there is. Doesn't 19K speak about awarding to that which is otherwise payable? Yes, it is. So, if you're going to award 19K penalties for unpaid medical expenses, then they must equal compensation, or you couldn't award penalties on them. That is correct, John. That is a correct analysis. In terms of the Section 12 examination, there is no case law that says that, as Your Honor pointed out, that compensation does not include medical. To say so would probably affect maybe 50 to 60 percent of all of the Section 12 examinations that are conducted in Illinois. Especially in this case, the commission's decision was not against the manifest weight of the evidence in that if you do read compensation to only include payments to the petitioner, all of the post-arbitration medical would automatically have to be accepted. Open medical does not mean unlimited or unfettered medical. In this particular case, they submitted records from after the date of arbitration that showed that she may have had a possible stroke and she may have had possible shoulder treatment. She had shoulder treatment. I think if you read the act to say that it's compensation that excludes medical, respondents will be on the hook for an unfettered amount of medical. In regards to this particular case, initially the commission said that because the petitioner refused to submit to an IME, that the medical pertaining to the pain management treatment that was prescribed by Dr. Kadia, who was the doctor, she began seeing nine months after the case or actually the decision was rendered. The respondent was not responsible for paying that and there were no penalties for non-payment of that. Also, may I interrupt briefly? If I may. A couple of things. One, when was the, I'm not sure, is it called an enforcement petition or the petition to compel under AA? When was that filed? Do you know? I didn't pick it up from the record. It may not even be important, but I'm wondering. Well, that's okay if you don't have it at hand. No problem there. Okay. I'm sorry. I think it was after a year after the initial decision. If we were, tell me why we should read the arbitrators, do we call it an open mandate? Is that the term of art? Open medical. Open medical. Thank you, counsel. Excuse me. Why should we read it so narrowly? Let me just finish because it's a particular question. As I understand it, he said, follow-up visits with Dr. Sokolowski, the IME that apparently had been, I can't, I'm not even sure. I think it was long delayed. And three, if it's still recommended by him. So that is tied in at least verbally to Dr. Sokolowski. And then I believe the language is continuing medication as required. Continuing prescription medication might actually be it as required. And as I understood the original ruling, although I couldn't find it when I went back again this morning to find exactly where it was in the record, the arbitrator said claimant needs further care and treatment in the form of prescription or over-the-counter meds. So he or she made that finding. It wasn't appealed. And why should we now limit the prescription medication to only that prescribed by Sokolowski? If the same medications are ordered by Dr. Kalina, the pain management specialist to whom she was referred later, why should we parse that out? Did it clearly, the arbitrator order that, require it, rule on it, and that was never appealed? Your Honor, I think the standard is whether or not the commission's decision pertaining to those, that treatment in which they said it was not part of the arbitrator's decision due to the fact that Dr. Kadia had incurred about $200,000 in medication and expenses, that it was not part of, I think, the exact verbiage. But if it's the exact same medication, and we're not even a year later at the time the petition was filed, and the arbitrator has said petitioner needs further care and treatment, I think he said, I don't see, would not likely change over time. Her condition has plateaued. It would not likely change over time. I see, and I think you make a good point, counsel, that, well, is that against the manifest way of the evidence? That's a good point. I guess my question is, since we're just making, they made that decision based on the verbiage in the arbitrator's ruling, don't, wouldn't we make the decision as to whether or not that was included in the arbitrator's ruling, unappealed ruling, as a matter of law? No, because this is... Back to you, counsel. Thank you. This is additional treatment, and in his decision, he specifically said Dr. Sokolowski, and if you look at the records from Dr. Sokolowski, he's billing maybe $4,000 or $5,000 in those six months after the decision, whereas when you look at the bills from Dr. Kadia, it's over $200,000 by the time the case proceeds to trial. One of the issues in a lot of these cases is pain management, and I think if he, if she submitted to a Section 12 examination, it would have probably went forward on that, but the reason why benefits were cut was because she didn't, she wouldn't, and her attorney refused to have her undergo a Section 12 examination. Is that correct? Because as I read the record, and excuse me for, I just want to grab it, I co-printed out the schedule of what you paid, it appeared to me, and I, it's a very voluminous record, which I do not claim to have been over completely, so bear with me, counsel, but it looked to me like Travers paid five prescriptions, and if I read the record correctly, I don't think they paid for the MRI. Yes. So I guess, and ultimately, if you, probably you were going to address it, but if you're right about the IME, and, and it would preclude, you know, there would be a compensation after that date, then I guess my concern is, is the amount enough to deter an insurance company, or an employer really, from just not paying, you know, they don't like an open, I almost said an open mandate again, the open medical, they prefer to settle those out, and know their liabilities, that makes a lot of sense, it's very rational, but, and I'm wondering, does that, will that deter insurance companies, or employers in the future? Your Honor, I think so, because if you read the Commission's decision, they did award some penalties, they awarded the penalties from, from what Dr. Sokolowski still wrote, and I think there are a couple different issues in terms of, by not doing so, post-judgment, the petitioners will have the opportunity to be referred to six or seven different types of doctors. In this case, Dr. Sokolowski was an orthopedic surgeon, and after the decision, he kind of turfed her off to a pain management doctor. If we continued to pay pain management bills up until today, if he had racked up over $200,000, we'd probably be looking at $500,000 in medical bills, and when we apply the facts to these cases, that there was no independent medical examination because of the refusal, so, or to say that there's no recourse if somebody racks up $500,000 or $300,000 or $400,000 in medical bills, I think that's why you have a, the situation in place where case law has previously said that there was a right to a Section 12 examination after post-arbitration, and I know my time is almost up, but the last point... Thank you, counsel. One last question. Did they pay that, for that MRI? Did travelers pay for that? She indicated that she never received the bill, and that's in her testimony. Thank you. Thank you. Are there, you're correct, counsel, your time is up at this time. Are there other questions from the court? Hearing none, you will have time in reply. Mr. Nierman, you may respond. Thank you, counsel. I've laid out, I think, a pretty breathtaking array of, of defense tactics that travelers employed to avoid paying for an award that was entered in November of 2017. Specifically, what was awarded was follow-up visits with Sokolowski, ongoing pain management treatments. My client was in a condition of chronic pain. That's what the treatment was for. If you look at the very first visit, post-award, on December 8, 2017, Sokolowski billed for that. Travelers' response to that first bill is in the record, and you'll find it at page C1834 in Volume 2, C1834, or C1841, I'm sorry. Travelers' response to that very first bill is claim is not covered. The services procedures are not reimbursable because this claim is currently in litigation. The date on traveler's note to Dr. Sokolowski was December 20th, which was more than 20 days past the award, which means that they weren't appealing this. They were still denying it. As for the MRI, there are two episodes of MRI denial in the record. We get, we get the first one on December 1st, 2018. That is at C1834, Volume 2, C1834, Volume 2. MRI charges are sent to travelers. Travelers' response, a denial has already been recommended for this service. We're not the payer for this. Okay, that was awarded in the decision. It was pending for years at that point. Then in 2021, she finally gets the MRI through her own insurance with a new company. Travelers is responding, this is a controverted claim. We're not going to pay for this. Now, what's pretty awful about it is if you look at the initial denial of Sokolowski's bill and the MRI bill, Diane Neary is the adjuster who's identified on the response from travelers to Sokolowski into the MRI facility. She was getting this stuff. She was denying it. So, that's pretty darn clear. So, my proposal in this case, I think it's kind of interesting. What's the remedy for that? It has to be the 8A petition that I filed. It has to be that this post-award petition that I filed. I don't know how else I can do anything about it. And if you look at what was awarded, counsel was complaining about the amounts of the bills and stuff. Counsel had every legal opportunity to engage with the act and the defense provisions he was given in the proper form. They said they could have done a section 12 in theory had they provided travel expenses, had they set it at a time that was convenient for my client, had they paid wage loss for the time that they were told she was going to be working. They didn't do anything to change the date to accommodate my client. They also picked a doctor, Dr. Lamme for the IME appointment, which they were demanding. Lamme did two IMEs before the initial trial award. He was deemed not credible by the arbitrator on my client's treatment needs, on whether or not she needed any restrictions, whether she was an MMI. He was deemed not credible, but travelers went right back to Dr. Lamme demanding an IME with Dr. Lamme. I mean, if Dr. Lamme is not credible, we know he's got licensing, so he's a qualified examiner, but he's not applying that licensure in a appropriate manner. So he's not duly qualified in the terms provided under section 12. Now that assumes that he even gets a section 12 exam. I don't think he gets a section 12 exam, and I understand what you were asking Justice Hoffman about compensation, but if you look at the terminology in section 12, it says disability payments for workers entitled to disability payments. And of course, that includes people that are asking for disability payments or trying to Mr. Nierman, I asked the question on compensation. Is it related to medical expenses? Not section 12 issues? I read too much into it. I apologize. So because my client was trying to enforce her open medical rights, there was no disability payment she could potentially get. So section 12 probably doesn't even grant them a right for an exam. And I assume that's what 8.7 was passed for, the utilization review provision, because that specifically addresses the evaluation provided health care service to determine the appropriateness of the levels of health care services, medically necessary, and the quality of the services provided. 8.7 specifically provides for the carrier to use that provision to set up a utilization review, which they did three times in this case, but they didn't do it on any of Dr. Kleene's stuff or any of Dr. Kleene's medication or the pain management. So they got their utilization review, they properly used the statute in that respect. And I talk about how the utilization reviews were beyond bad in the way that they misapplied 8.7. They wouldn't provide the feedback mechanism that the prescribing doctor would need to respond to a denial. They didn't provide any notice. I mean, they wouldn't return calls of Dr. Sokolowski, they wouldn't write him back, they wouldn't email him back. So eventually we got to Dr. Morrow, their third utilization reviewer. Dr. Morrow, like the other two, hadn't been given the notes that he needed to really evaluate whether or not the stuff he was asked to evaluate was properly applied or used. May I interrupt you at that point? And excuse me if I'm not sufficiently schooled on the statute there, but what is the duty of the carrier or the employer when they ask for utilization review? As I understand the briefs, there's complaint that the doctors weren't, they were asked to at least in one instance, prescription medication, whether it was necessary, but weren't provided any of the background documents. Is there anything in the statute that requires more than just what might be argued as lip service on a utilization review? You know, it's a pretty vague statute. I'll grant you that. But I think what they do is it does require that they notify everybody they're doing a utilization review. They do have to set the process up. They have to provide a feedback mechanism so the doctor can respond to any deficiency in what they've been provided. So you presume there's some kind of an obligation to provide the doctors you want to review the treatment some of the records so they know what they're reviewing. The travelers, as you can see from Dr. Morrow's report, drafts the entire report for the utilization review or accept the final conclusion. So it's not really utilization review done by a objective independent evaluator. It's really a traveler promoted operation. So I think the feedback mechanism judge allows the utilization reviewer to get additional information if they need it. When you don't get the feedback mechanism to the prescribing doctor, though, there's no way to even communicate or send something over. So Dr. Sokolowski was sending over records to travelers. He was notifying travelers. They're not giving me a feedback. They're not returning calls. I don't know what else we can do. Did I answer your question, Judge? Yes, thank you. And let me ask you also the same question I asked counsel before. Why should we read, and you might as well respond to counsel's point that he sees it as a manifest weight issue, why read the arbitrator's ruling and prescription medication as required to not include the very same medications Dr. Kalina prescribed that Dr. Sokolowski was providing at the time of the arbitration ruling, which was not appealed? And then if you do have, I would also ask you to tell me if there's any reason that an attorney who's dealing with a vexatious employer over small bills, is he or she limited to a percentage recovered, or could he or she seek an hourly rate under the act? Point one, I agree with you. I think the award, because they allowed it to go to a final binding decision, and the award was pretty broad. Continuing medication, she's not likely to improve, so that's going to be a long-term medication provision. They should have appealed that, because clearly that indicated something else was coming. They didn't appeal it, so I think they're bound by not appealing that. So there's no reason. There's no reason I can think of where you would limit the access of a chronic pain patient to certain medications, or even a particular chronic pain treatment plan, when you see the insurance company responding right out of the gate after the award, that they didn't appeal his final, to not approving anything and denying everything, and then making up stuff to try and protect themselves. The attorney fee issue, Judge, the counsel talks about, oh, there wasn't that much, you know, awarded for Sokolowski, but they didn't pay that anyway, and then there was a lot more awarded for Kalina. So apparently it's the quantity of the money that gets travelers' interest in this case. The 20% award against the bills associated with Dr. Sokolowski comes out to almost nothing. I mean, I spent over 100, 150 hours just enforcing this Open Medical Award. I'll bet we spent four or 5,000 in doctor depositions and transcripts just to enforce the bills, which are probably about that price. So an Open Medical Award is only a right to the extent you can enforce it. But I'm only asking about, you know, penalties and fees. Do they include the cost of deposing bound to a percentage amount, or could he or she seek an hourly? Section 16 is wide open on that. There is no requirement that we, I mean, traditionally, we apply a 20% upcharge against whatever's awardable as the attorney fee. There is no requirement that the attorney be limited to that. And I think Section 16 can even be read to include an award of litigation costs for the efforts to go and enforce an Open Medical Award or some other award. So I think, and what I would really welcome is this court saying, well, under the circumstances, when there's a small amount of bills, there's no incentive financially for a carrier to comply with an award unless actual attorney fees are awarded to the petitioner that has to go in and do the heavy lifting to enforce that Open Medical Award over a period of seven years. So, I mean, to litigate these things out, we have to front all the money on the case, which means that, you know, we're taking a shot at a chance that we may get an enforcement action that comes down in our favor without any guarantee that there's going to be payment in the future, that we can deduct even the expenses out of. So that's why so few of these actions get to this court because nobody can afford to do this stuff. It's just structurally unfair to our side. So I would ask that you enter an award or give us a ruling saying, look, when a carrier behaves this way, actual attorney fees should be awardable as well as litigation costs. And I don't know what else the penalty could possibly be. So counsel did mention in his reply brief that I had forfeited the argument about the travel expenses. That's false. I can give you the page sites if you want, but I asked, I had Thorne testify about it at the hearing. I had Neera testify about it. I put it in each of my briefs at each of the levels, including your brief. So there was nothing forfeited. There was nothing waived. That was a misrepresentation to you. So I guess the bottom line is I would hope that you would uphold Judge and now Justice Anderson's ruling on this case. It was sound. If the commission is misapplying a statutory provision to assist one party, that is a misapplication of law. It had to be reversed by Judge Anderson at that point. And because there was no other defense offered to these bills, other than we, the carrier demand and get an IME, and we don't even have to pay expenses and we don't have to pay wage loss. We don't have to make it convenient. That was the position that they drew in the sand. That was their line for this appeal. Assuming that's wrong, assuming I'm correct about how that has to be applied. It was a legal error. There's no other defense. The rest of the bills, the next group of bills beyond this, you know, use the IME process properly. If you can do it, use the utilization process properly. If you can do it, go to the commission, ask for an independent evaluation under section 19E, do a medical review, do something, you know, other than play games with my client's open medical award. I hope that you would affirm the decision from Judge and now Justice Anderson. I think it's sound as sound can be, and I appreciate your time if you have no more questions for me. I have one question, Mr. Nerman. Yes, sir. Is it your contention that if medical expenses are payable pursuant to the schedule, that penalties can be awarded on anything other than the amount payable under the schedule? Yes, sir. And can I explain? Because the fee schedule provides, as I put in the brief, the fee schedule provides three different methods for payment of bills, right? When the carrier denies or tells a provider we're not covering this because we're disputing treatment, the operative value of each medical charge is the face value of that charge per the fee schedule, per the language in the fee schedule, which means all the carrier has to do is say we're not paying for this because we're disputing it. Now my client is facing liability over face value for bills, not fee schedule values. So because they're subjecting my client to potential financial ruin through fee schedule charges that they refuse to pay and are not going to pay, that has to be the operative value against which penalties and fees, well, penalties. Well, can I ask you a question? Assuming the commission turns around and says employer or carrier, you were wrong. These bills have to be paid. Does the employer have to pay anything other than the fee schedule for those bills? What I would hope you would do is I would hope you would recognize that- No, that's not my question. My question is, does the employer have to pay anything other than the fee schedule for those bills? I think so, yes. You want to hear why? Under what provision? Because I think the fee schedule is a defense, again, another defense windfall, right? If they don't raise their request for a windfall, then they don't get the fee schedule windfall. Secondly, the commission already ruled that expenses and stuff are based off the face value of the bills. He didn't appeal that issue. So is it law of the case at this point that fee schedule, I mean, the face value of the bills controls the award at this point? I'm troubled by the language of 19K that says that the additional 50% is based on the amount payable at the time of the award. I understand. And the amount payable is only fee schedule. I understand. And my brief says why I disagree. I understand. Okay. Thank you. No further questions. Okay. Thank you very much. Mr. Smith, you may reply. Thank you so much, Justices. I'll just briefly say the reason why we're here today is because the petitioner's attorney denied a section 12 examination for him to say that they would have did it if she got mileage, or if they would have paid her for time off of work. You can't make that argument four years later when the case is in front of the court. If you look specifically at Mr. Newman's own emails, he advised the adjuster. He said he's not authorizing his client to attend any IMEs. That's found on the record on C1897, C1001 through 1005. The reason why we're here is because he emphatically denied producing his client for a post arbitration IME. He can't raise these issues now if he didn't raise them before this case got to this point. The reason why we're here is because he denied it and it's in his own words. So nothing that he says to that has any credibility. The second thing I'd just like to point out is in the commission's decision, it was page 031 of their decision. They specifically said that the prospective medical award in the arbitrator's decision did not include future treatment provided by a pain management physician whom the petitioner was referred to after the arbitration hearing. The pain management was made by Dr. Sokolowski nine months after the decision was issued. To reverse that, the court has to find that that finding by the workers' compensation commission is against the manifest weight of the evidence. One thing I'd like to point out is it's disingenuous to say, oh, there's all these issues with the utilization review when that's the only mechanism we were left with because the petitioner's attorney refused to produce the petitioner for a section 12 examination. When you have a section 12 examination, the examiner is able to ask questions pertaining to her treatment, where she's getting treatment, and things of nature. You can't on one hand say, well, they didn't do X, Y, and Z during the utilization review. The only reason why we did the utilization review was because he continued to deny the request for a section 12 examination. He's saying that Judge Anderson ruled correctly that section 12 was misapplied. There's no basis for Judge Anderson's decision. He issued a six or seven sentence decision on a case that has over 1,900 or 1,800 pages of records. The court should not have to decipher if he meant that legally it was being misapplied or he's trying to say that the determination made by the commission that the pain management that was a referral that was made nine months after the accident was not part of the initial commission decision. In regards to the penalties issue, we raised the issue of the fee schedule amount in our brief. Of course, we couldn't raise it the first time it was up in the circuit court because we didn't have the penalty award that was issued by the court until the court reversed it. For those reasons, we think that the initial and the commission did award some penalties in regards to the treatment that they thought was part of the initial decision. They did award penalties. What he's saying in regards to penalties, it fails to take into consideration that the commission initially did award some penalties. I don't have anything further. Thank you. Any questions? May I ask that first utilization review was in July of 2018, wasn't it? Before even the referral to Dr. Kalina, was it not? It could have been, but the utilization review in regards to the... It wasn't made until after the denial of the IME. When was the IME demanded? I believe sometime around September of 2018 or so. Well, then that was two months after the first utilization review. I think the second one was August 28, 2018. My flow chart indicates claimant was referred to Dr. Kalina August 10, 2018. Sometimes there's a delay in when we get medical records versus when, especially if it's a new referral from Dr. Zarkolowski. Maybe, but I guess my point is you utilized, no pun intended, the utilization review before the referral to Kalina. Yeah, but there are some gaps in the post-Kalina utilization reviews. Those gaps probably wouldn't be there if you have IME. Part of the independent medical examination is they get to talk to the petitioner and figure out where she's been treating recently. Thank you, counsel. Thank you. Thank you. Thank you. Any further questions from the court? Well, thank you, counsel, both for your arguments in this matter. It will be taken under advisement. The written disposition shall issue.